UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CAYUGA INDIAN NATION OF NEW YORK,

*Plaintiff,*

-v-

SENECA COUNTY, NEW YORK,

*Defendant.*

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

*Civil Action No.*

---

## NATURE OF ACTION

1. The Cayuga Indian Nation of New York (the "Nation") brings this action against Seneca County (the "County") to stop the County from attempting to foreclose on, convey and remove the Nation from lands which it possesses within Seneca County. The County's efforts violate federal law regarding restraints on alienation of the lands of Indian tribes and the sovereign immunity of Indian tribes themselves. The Nation seeks declaratory and injunctive relief from this Court pursuant to the All-Writs Act, 28 U.S.C. § 1651(a) and Fed. R. Civ. P. 65(a) enjoining the County from further efforts to maintain or effectuate the pending foreclosure proceeding as to four Nation-owned properties within the County.

## JURISDICTION AND VENUE

2. Jurisdiction as to the Nation's federal claims exists pursuant to 28 U.S.C. §§ 1331 and 1362. Those claims arise under, and seek to preserve rights and immunities secured by, the Indian Commerce Clause (Art. I, § 8) of the United States Constitution, the Nonintercourse Act, 25 U.S.C. § 177, the 1794 Treaty of Canandaigua and federal common law.

3. The Western District of New York is an appropriate venue pursuant to 28 U.S.C. § 1391(b). Seneca County, it officials, agents and employees are in this district. All of the events giving rise to the Nation's claims occurred in this district. The real property that is the subject of this action is in this district.

## PARTIES

4. Plaintiff Cayuga Indian Nation of New York is a federally recognized Indian Tribe. *See*, 67 Fed. Reg. 46328 (July 12, 2002).

5. Defendant Seneca County is a political subdivision of the State of New York.

## FACTS

6. The Nation possesses lands in Seneca County, including lands to which the County has assigned the following four property tax identification (or "tax parcel") numbers: #32-1-07; #32-1-14; #32-1-29.11; and #05-1-65 (the "Nation-

owned properties"). The County has notified the Nation that it has filed a proceeding to foreclose on these Nation-owned properties based upon the Nation's failure to pay real property taxes on said properties. *See,* Exhibit "A," Tax Enforcement Notification, Index Number 42044," "Petition and Notice of Foreclosure," and accompanying Schedule "A." The County has indicated by virtue of said "Tax Enforcement Notification" (Ex. "A") that to "avoid loss of ownership or any other rights in such [properties] all unpaid taxes and legal charges must be paid prior to January 14, 2011, or [the Nation] must interpose a duly verified answer in the proceeding." *Id.*

7. The Nation-owned properties identified in paragraph "6" hereinabove are located within the Nation's reservation acknowledged in the Treaty of Canandaigua, November 11, 1794, 7 Stat. 44, in which the United States recognized and established as a matter of federal law a 64,000-acre reservation for the Nation in Upstate New York.

8. Although the Nation now has actual possession of the properties identified in paragraph "6," that has not always been the case. The Nation lost possession of those properties more than one hundred years ago by virtue of a series of illegal sales to the State of New York. It has subsequently re-acquired these properties through a series of purchases on the open market.

9. None of the transactions or transfers by which the State acquired these Nation-owned properties complied with the federal participation and approval requirements of the Nonintercourse Act, 25 U.S.C. § 177. All of those transactions and transfers were in violation of federal law and were void *ab initio*, and the Nation never lost its aboriginal title with respect to the lands involved in said transactions. Thus, the Nation's 64,000-acre reservation continues to exist to this day.

10. Indeed, Judge David N. Hurd of the Northern District of New York has confirmed that the Nation's federal treaty reservation remains intact today. *See, Cayuga Indian Nation of New York v. Village of Union Springs,* 317 F. Supp. 2d 128, 135-43 (N.D.N.Y. 2004), *vacated on other grounds,* 390 F. Supp. 2d 203 (N.D.N.Y. 2005).

11. Further, the United States has indicated in filings in *Cayuga Indian Nation v. Gould,* 14 N.Y.3d 614 (2010), that the Nation's reservation remains in existence.

## COUNT I

### VIOLATION OF FEDERAL PROHIBITIONS ON FORECLOSURE ARISING FROM (a) RESTRICTIONS AND ALIENATION OF LAND AND (b) TRIBAL SOVEREIGN IMMUNITY

12. Paragraphs "1" through "11" above are incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

13. The lands identified in paragraph "6" are within the Nation's reservation that was confirmed and guaranteed by the Treaty of Canandaigua. In the Treaty of Canandaigua, the United States recognized the Nation's 64,000-acre reservation and pledged that the "reservation [] shall remain theirs until they choose to sell the same to the People of the United States who have the right to purchase." 7 Stat. 44, 45. The 1794 Treaty prohibits Seneca County from interfering with the Nation's possession of these Nation-owned properties.

14. Article I, Section 8 of the United States Constitution reposes authority over commerce with Indians in the Congress of the United States. This authority is exclusive; it pre-empts the authority of states and their political subdivisions to extinguish aboriginal title to tribal reservation lands.

15. Whether or not the Nation-owned properties identified in paragraph "6" are taxable, they are subject to the restrictions against alienation imposed by the Nonintercourse Act, 25 U.S.C. § 177. Section 177 provides that "[n]o purchase, grant, lease or other conveyance of lands, or of any title or claim thereto from any Indian nation or tribe of Indians shall be of any validity in law or equity unless the same be made by treaty or convention entered into pursuant to the Constitution." Seneca County has not complied with the provisions of the Act for federal involvement in and approval of a conveyance of an interest in these Nation-owned properties.

16. As a federally-recognized Indian nation, the Nation possess tribal sovereign immunity, which bars administrative and judicial proceedings against the Nation and bars Seneca County from taking any assets of the Nation, including the Nation-owned properties identified in paragraph "6," whether or not the lands are restricted against alienation and whether or not they are taxable.

17. Seneca County's efforts to acquire, convey, foreclose, sell or transfer title to the Nation-owned properties identified in paragraph "6:"

    a. Violate the 1794 Treaty of Canandaigua;

    b. Violate Article I, Section 8 of the United States Constitution and federal common law, which give exclusive authority to Congress with respect to extinguishment of aboriginal title to Indian lands;

    c. Violate the Nonintercourse Act, 25 U.S.C. §177; and

    d. Violate the Nation's sovereign immunity, which derives from Article I, Section 8 of the United States Constitution and from federal common law.

18. Accordingly, Seneca County has no right to acquire, convey, foreclose on, sell or transfer title to the Nation-owned properties within the County, and the County's efforts to do so are null and void under federal law.

19. This prohibition on foreclosure upon lands owned by a sovereign Indian nation has been expressly recognized by decisions rendered in district court

cases filed in the Northern District of New York, as affirmed by the United States Court of Appeals for the Second Circuit. *See, Oneida Indian Nation v. Oneida County*, 432 F.Supp.2d 285 (N.D.N.Y. 2006); *Oneida Indian Nation v. Madison County*, 401 F.Supp.2d 219 (N.D.N.Y. 2005); *affirmed, Oneida Indian Nation of New York v. Madison County, et al.*, 605 F.3d 149 (2d Cir. 2010), *cert. granted* 131 S.Ct. 459 (2010). While the Supreme Court has granted certiorari to review the Second Circuit's decision, it has not yet decided the case. Therefore, it remains the law of this Circuit that the County's foreclosure action as to Nation-owned properties located within Seneca County is barred.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cayuga Indian Nation of New York respectfully requests that this Court award the Nation:

a. a declaration:

(i) that Seneca County may not foreclose on, acquire, convey, sell or transfer title to the Nation-owned properties in Seneca County based on the annexed Tax Enforcement Notification and Petition and Notice of Foreclosure and that all of the efforts of Seneca County to do so and to interfere with the Nation's ownership, possession and occupancies of such lands are null and void;

b. an injunction:

(i) prohibiting Seneca County, its officers, agents, servants, employees and persons in active concert or participation with them from any further efforts to effectuate, maintain or complete foreclosure, acquisition, conveyance or sale of, or transfer of title to, Nation-owned properties in Seneca County, and from interfering in any way with the Nation's ownership, possession, and occupancy of such lands;

(ii) mandating that Seneca County, its officers, agents, servants, employees and persons in active concert or participation with them void and rescind all acts taken to acquire, convey, foreclose, sell or transfer title to Nation-owned properties within Seneca County to date, including the annexed "Tax Enforcement Notification" and "Petition and Notice of Foreclosure" (Ex. "A"); and

c. such other relief to which the Nation may be entitled in law or in equity.

Dated:  January 4, 2011
        Syracuse, New York

Respectfully submitted,

*[signature]*

Daniel J. French, Esq.
Bar No. 509055
Lee Alcott, Esq.
Bar No. 101017
*Attorneys for Plaintiff*
*Cayuga Indian Nation of New York*
FRENCH-ALCOTT, PLLC
300 South State Street
Syracuse, New York 13202
Tel.: (315) 413-4050
Fax: (315) 413-4055
dfrench@frenchalcott.com
lalcott@frenchalcott.com