UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CAYUGA INDIAN NATION OF NEW YORK,

                            Plaintiff,

         -v-                                                    DECISION AND ORDER

SENECA COUNTY, NEW YORK,                      11-CV-6004 CJS

                            Defendant.
_____

APPEARANCES

For Plaintiff:                  Daniel J. French, Esq.
                                Lee Alcott, Esq.
                                French-Alcott, PLLC
                                300 South State Street
                                Syracuse, New York 13202

For Defendant:              Phillip G. Spellane, Esq.
                                Harris Beach PLLC
                                99 Garnsey Road
                                Pittsford, New York 14534

INTRODUCTION

      This action presents the question whether Seneca County ("Defendant") may foreclose on real property owned by the Cayuga Indian Nation of New York ("Plaintiff") for failure to pay *ad valorem* property taxes. Now before the Court is Plaintiff's application for preliminary injunctive relief, enjoining Defendant from foreclosing on the subject parcels, on the grounds of tribal sovereign immunity. (Docket No. 4). For the reasons that follow, the application is granted.

BACKGROUND

Plaintiff is a federally-recognized Indian Tribe which owns real property in Seneca County. The subject dispute involves land that was formerly part of the 64,000-acre Cayuga Reservation acknowledged by the Treaty of Canandaigua in 1794. Shortly after 1794, the Cayuga Nation sold large portions of the Reservation lands to the State of New York. Plaintiff maintains that such sales were illegal and void *ab initio*, since they did not comply with the requirements of the Non-Intercourse Act, 25 U.S.C. § 177. Plaintiff contends, therefore, that the entire 64,000-acre Cayuga Reservation remains intact to this day. Amended Complaint [#9] at ¶ 10. Defendant disagrees.

Approximately two centuries after selling off the Reservation land to the State of New York, Plaintiff began purchasing parcels of property on the open market that lie within the geographic area of the aforementioned Reservation. Plaintiff contends that such properties are now Reservation land and are "Indian Country" within the meaning of federal law. *See*, Amended Complaint [#9] at ¶ ¶ 7-10. Defendant again disagrees.

The subject action involves five[1] such parcels of property located in Seneca County, which were originally included in the Reservation, but which were later sold to third parties, and then re-purchased by Plaintiff. Defendant has attempted to collect *ad valorem* property taxes on the parcels, and Plaintiff has denied any obligation to pay them. As a result, Defendant initiated foreclosure proceedings, pursuant to Article Eleven of the New York State Real Property Tax Law.

---

[1]The Amended Complaint indicates that there are five parcels. Amended Complaint [#9] at ¶ 7. However, an affidavit submitted by Plaintiff's counsel indicates that there are four properties. Alcott Aff. [#6] at ¶ 3.

On January 5, 2011, Plaintiff commenced this action, seeking permanent declaratory and injunctive relief. At the same time, Plaintiff made the subject application for preliminary injunctive relief, enjoining the County from foreclosing on the properties. Plaintiff contends that it is entitled to injunctive relief because the foreclosure actions are barred by sovereign immunity. Specifically, Plaintiff contends that "[a]s a federally-recognized Indian nation, [it] possess[es] tribal sovereign immunity [from suit], which bars administrative and judicial proceedings against the [Indian] Nation," even if the taxes are properly owed.[2] In that regard, Plaintiff relies, in large part, on the Second Circuit's decision in *Oneida Indian Nation of New York v. Madison County and Oneida County*, 605 F.3d 149 (2d Cir. 2010) ("*Oneida*").

The Court granted Plaintiff's request for an expedited hearing, and scheduled the matter to be heard on January 13, 2011. However, the parties agreed to stay the foreclosure proceedings, and stipulated to a briefing schedule, thereby mooting the request for an expedited hearing.

On February 3, 2011, Defendant filed opposing papers. Defendant observes that after Plaintiff's application was filed, the U.S. Supreme Court vacated and remanded the Second Circuit's *Oneida* decision, and argues that such decision now "has no precedential value whatsoever." Spellane Aff. [#12-1] at 2. Defendant contends, *inter alia*, that the

---

[2]Plaintiff maintains that in this action it is not claiming that the property is "immune from taxation." Pl. Reply Memo [#21] at 1 ("The Nation does not claim the parcels at issue here are immune from taxation as a matter of *federal* law.") (emphasis added). Instead, Plaintiff contends that while the County may impose taxes, it has no right to collect them. *Id*. ("It is well-established that, even where there is no immunity from taxation, sovereign immunity from suit may bar a state from resorting to a judicial remedy to enforce its tax."). Although, Plaintiff's Amended Complaint indicates that under New York State law, "an Indian tribe's property [is exempt] *from taxation* if located within an Indian reservation." Amended Complaint [#9] at ¶ 1 (emphasis added); *see also, id*. at ¶ 21 (citing New York Real Property Tax Law § 454).

Second Circuit's opinion was incorrectly decided in any event, since it was contrary to Supreme Court precedent, most notably *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 112 S.Ct. 683 (1992) ("*Yakima*") and and *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197, 125 S.Ct. 1478 (2005) ("*Sherrill*").  According to Defendant, *Yakima* established that tribal sovereign immunity does not bar *in rem* property tax foreclosure proceedings against property owned by an Indian tribe, while *Sherrill* held  that an Indian tribe cannot revive its sovereign authority over land by purchasing it after years of inaction.[3]

On May 5, 2011, counsel for the parties appeared before the undersigned for oral argument.

## DISCUSSION

Plaintiff seeks an injunction enjoining the state-court tax foreclosure proceeding, pursuant to the  All-Writs Act, 28 U.S.C. § 1651(a) (Providing that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.");  *see also*, 28 U.S.C. § 2283 (A federal court may grant an injunction to stay state court proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.").  The parties dispute whether tribal sovereign immunity applies, and therefore disagree as to whether the Court should enjoin the state

---

[3]Defendant also maintains that the subject foreclosure actions are not barred by the Indian Trade and Intercourse Act of 1834, also known as the Non-Intercourse Act.  Plaintiff had argued, in its moving papers, that the foreclosure actions violated the Non-Intercourse Act, which prompted Defendant to devote a large part of its responding brief to that issue. *See*, Def. Memo of Law [#12] at pp. 19-33. However, Plaintiff's reply brief disclaims reliance on the Non-Intercourse Act as a basis for the subject motion. *See*, Pl. Reply Memo of Law [#21] at p. 2, n. 2 (Indicating that tribal sovereign immunity provides a sufficient basis for granting the motion, without regard to the Non-Intercourse Act).  Accordingly, the Court need not address the Non-Intercourse Act at this time.

court proceedings.

A lengthy discussion is unnecessary, since, according to the Second Circuit's *Oneida* decision, Supreme Court precedent clearly determines the outcome of this motion, and holds as follows:  Even assuming that Seneca County has the right to impose property taxes on the subject parcels owned by the Cayuga Indian Nation, it does not have the right to collect those taxes by suing to foreclose on the properties, unless Congress authorizes it to do so, or unless the Cayuga Indian Nation waives its sovereign immunity from suit. Congress has not authorized Seneca County to sue the Cayugas, and the Cayugas have not waived their sovereign immunity.  Consequently, the Cayugas' motion for an order enjoining the foreclosure actions must be granted.

The cases upon which the foregoing paragraph rests are well-known to the litigants and to the courts that will undoubtedly be called upon to review this Court's ruling.  For the benefit of anyone reading this decision who is not familiar with them, and who may be understandably perplexed by this ruling, the Court will briefly review the controlling law.

In *Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 1702 (1998), the Supreme Court reaffirmed the federal common law doctrine that Indian tribes cannot be sued unless Congress authorizes the suit or unless the tribes waive their immunity.  Significantly, the Supreme Court held that even if a state has the authority to tax or otherwise regulate an Indian tribe in a particular instance, it does not have the ability to sue the tribe to enforce the tax or regulation, unless Congress authorizes the suit, or unless the tribe waives its sovereign immunity:

> As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. . . .

5

> Our cases allowing States to apply their substantive laws to tribal activities are not to the contrary. We have recognized that a State may have authority to tax or regulate tribal activities occurring within the State but outside Indian country.  To say substantive state laws apply to off-reservation conduct, however, is not to say that a tribe no longer enjoys immunity from suit. In [*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 111 S.Ct. 905 (1991)], for example, we reaffirmed that while Oklahoma may tax cigarette sales by a Tribe's store to nonmembers, the Tribe enjoys immunity from a suit to collect unpaid state taxes. *There is a difference between the right to demand compliance with state laws and the means available to enforce them.*

*Id*., 118 S.Ct. at 1702-1703 (emphasis added, citations omitted).  In doing so, the Supreme Court questioned "the wisdom of perpetuating the doctrine" of Tribal sovereign immunity, but deferred to Congress to make any changes in that regard. *Id*., 118 S.Ct. at 1704-1705 ("The capacity of the Legislative Branch to address the issue by comprehensive legislation counsels some caution by us in this area. . . . [W]e decline to revisit our case law and choose to defer to Congress.").   To date, Congress has declined that invitation.

In *Sherrill*, the Supreme Court rejected the Oneida Indian Nation's claim to have sovereign authority, in the form of exemption from property taxation, over real property which had been part of the Oneida's reservation, but which had been sold, and then re-purchased by the Oneidas on the open market:

> In this action, [the Oneida Indian Nation] seeks declaratory and injunctive relief recognizing its present and future sovereign immunity from local taxation on parcels of land the Tribe purchased in the open market, properties that had been subject to state and local taxation for generations. We now reject th[at] unification theory . . . and hold that standards of federal Indian law and federal equity practice preclude the Tribe from rekindling

embers of sovereignty that long ago grew cold.[4]

*Id.*, 125 S.Ct. at 1489-1490. Although the Supreme Court held that the Oneidas' property was subject to taxation, as well as to "local zoning or other regulatory controls," it did not explicitly hold that the City of Sherrill could sue the Oneidas to collect unpaid taxes.

Approximately five years later, in *Oneida*, the Second Circuit addressed a dispute that flowed from the Supreme Court's decision in *Sherrill*. Specifically, in the wake of *Sherrill*'s holding that the property recently purchased by the Oneidas was subject to taxation, Madison County and Oneida County attempted to collect unpaid taxes from the Oneidas, by foreclosing on the properties. The Oneidas responded by seeking an injunction in federal district court, enjoining the foreclosure actions, on the grounds of tribal sovereign immunity from suit. The district court granted summary judgment on that basis for the Oneidas, and the Second Circuit Panel affirmed that ruling, stating: "We affirm on the ground that the [Oneida Indian Nation] is immune from suit under the long-standing doctrine of tribal sovereign immunity. The remedy of foreclosure is therefore not available to the Counties." *Id.*, 605 F.3d at 151.

In that regard, the Second Circuit discussed the difference between "two distinct doctrines: tribal sovereign authority over reservation lands and tribal sovereign immunity from suit." *Oneida*, 605 F.3d at 156. The Court specifically stated that *Sherrill* involved only the former doctrine, and not the latter. That is, the Circuit Panel held that *Sherrill* merely authorized the imposition of taxes on the Oneida's properties, but did not authorize the

---

[4]The Supreme Court observed, however, that the Oneidas could seek to have the land taken into federal trust, and thus exempted from State and local taxation, pursuant to 25 U.S.C. § 465. *Id.*, 125 S.Ct. at 1495 ("Section 465 provides the proper avenue for [the Oneidas] to reestablish sovereign authority over territory last held by the Oneidas 200 years ago.").

taxing counties to take legal action to collect the taxes:

> [W]e do not read *Sherrill* as implicitly abrogating the [Oneidas'] immunity from suit.  No such statement of abrogation was made by the *Sherrill* Court, nor does the opinion call into question the *Kiowa* Court's approach, that any such abrogation should be left to Congress.  *Sherrill* dealt with the right to demand compliance with state laws.  It did not address the means available to enforce those laws.

*Id*. at 157-159 (citations and internal quotation marks omitted).  Although the Second Circuit Panel agreed with the Counties, "that the notion that they may tax but not foreclose is inconsistent and contradictory," it nevertheless concluded that the foreclosure actions had to be enjoined, since Congress had not authorized them, and since the Oneidas had not waived their sovereign immunity.  *Id*. at 159.

In a concurring opinion in *Oneida*, Judge Cabranes removed any possible doubt as to the meaning of the Panel's decision:

> The holding in this case comes down to this: an Indian tribe can purchase land (including land that was never part of a reservation); refuse to pay lawfully-owed taxes; and suffer no consequences because the taxing authority cannot sue to collect the taxes owed.  This rule of decision defies common sense. But absent action by our highest Court, or by Congress, it is the law.

*Id*. at 163 (footnote omitted); *see also, id.* at 164 (Indicating that the Panel's ruling was required by "unambiguous guidance from the Supreme Court," but calling upon the Supreme Court, or Congress, to correct the "anomalous" result and "reunite" "law and logic.").

The county defendants in *Oneida* petitioned for writ of certiorari, and the Supreme Court agreed to hear the appeal.  However, in an eleventh-hour tactical move, the Oneidas

avoided review by belatedly agreeing to waive sovereign immunity. Consequently, the Supreme Court vacated and remanded the action to the Second Circuit for further action in light of the Oneidas' waiver. *See, Madison County, N.Y. v. Oneida Indian Nation of New York*, 131 S.Ct. 704 (2011) (Mem). On remand, the Second Circuit affirmed the district court's decision in part, reversed in part, vacated in part, and remanded with instructions, on grounds unrelated to the issue of sovereign immunity from suit. *Oneida Indian Nation of New York v. Madison County*, 665 F.3d 408 (2d Cir. 2011).

Against the backdrop of these cases, Defendant maintains that it is entitled to foreclose on the Cayugas' properties, and asks this Court to issue a ruling that is directly contrary to the Second Circuit's ruling in *Oneida*. Defendant maintains that the *Oneida* decision has no force, since it was vacated by the Supreme Court. However, the Court disagrees. Although the Supreme Court vacated the Second Circuit's ruling, it did not do so on the merits, and there is no reason to believe that the Second Circuit would reach a different decision today. To the contrary, Judges Cabranes' concurring opinion, which Judge Hall joined, indicated that the Panel's ruling was necessitated by "unambiguous guidance from the Supreme Court," which has not changed.

Defendant nevertheless insists that *Oneida* was wrongly decided. According to Defendant, *Sherrill* necessarily held that the Oneidas could not invoke sovereign immunity from suit to avoid the *collection* of the disputed property taxes. On this point, in *Sherrill*, the Supreme Court stated:

> [G]iven the longstanding, distinctly non-Indian character of the area and its inhabitants, the regulatory authority constantly exercised by New York State and its counties and towns, and the Oneida's long delay in seeking judicial relief against parties other than the United States, we hold that the Tribe

9

> *cannot unilaterally revive its ancient sovereignty, <u>in whole or in part</u>, over the parcels at issue*.

*Sherrill*, 125 S.Ct. at 1483 (emphasis added).  Defendant argues that pursuant to *Sherrill*, an Indian tribe that purchases real property that may have previously been Reservation land is treated no differently than any non-Indian land owner with regard to that property.

At least one district court in this Circuit has agreed with Defendant on this point.  In *New York v. Shinnecock Indian Nation*, 523 F.Supp.2d 185, 298 (E.D.N.Y. 2007), which did not involve property taxes, the district court interpreted *Sherrill* as permitting a lawsuit against the Oneidas to collect the unpaid taxes:

> [I]t is clear from the Supreme Court's decision in *Sherrill* that a tribe can be prevented from invoking a defense of sovereign immunity where equitable doctrines preclude the tribe from asserting sovereignty over a particular parcel of land. <u>In other words, the *Sherrill* Court held that the [Oneidas] could not invoke sovereign immunity to defend against local real property tax enforcement proceedings, including eviction proceedings.</u> 544 U.S. at 211, 125 S.Ct. 1478. Specifically, . . . Justice Stevens argued in his dissent that tribal immunity could be raised "as a defense against a state collection proceeding." *Id*. at 225, 125 S.Ct. 1478.  However, the majority opinion specifically rejected that reasoning. *See id*. at 214 n. 7, 125 S.Ct. 1478 ("The dissent suggests that, compatibly with today's decision, the Tribe may assert tax immunity defensively in the eviction proceeding against Sherrill. We disagree."); *see also id*. at 221, 125 S.Ct. 1478 (Souter, J., concurring) (rejecting claim of territorial sovereign status whether affirmative or defensive). <u>Thus, *Sherrill* allows a tribe to be sued by a state or town, such as the instant case, to enforce its laws with respect to a parcel of land if equitable principles prevent the tribe from asserting sovereignty with respect to that land.</u> To hold otherwise would completely undermine the holding of *Sherrill* because, if defendants are immune from suit, plaintiffs here would be left utterly powerless to utilize the courts to avoid the disruptive impact that the Supreme Court clearly stated they have the equitable right to prevent.

(emphasis added).  However, the Second Circuit subsequently vacated the district court's

decision in *Shinnecock* for lack of subject matter jurisdiction, without addressing the merits of the ruling. *See, New York v. Shinnecock Indian Nation*, 686 F.3d 133 (2d Cir. Jun. 25, 2012).

The New York Court of Appeals has also seemingly interpreted *Sherrill* as permitting lawsuits against the Oneidas, and, by extension, the Cayugas, to collect property taxes on properties that were recently bought on the open market. In that regard, in *Cayuga Indian Nation v. Gould*, 14 N.Y.3d 614, 640, 642-643, 930 N.E.2d 233 (2010), the Court of Appeals made the following observation about the *Sherrill* decision:

> In *City of Sherrill*, the Supreme Court applied the doctrines of laches, acquiescence and impossibility to bar a claim by the Oneida Indian Nation that its repurchase of aboriginal lands resulted in the reassertion of that tribe's sovereign authority relieving the tribe of the obligation <u>to pay real property taxes</u> on the reacquired parcels.
> ***
> *City of Sherrill* certainly would preclude the Cayuga Nation from attempting to assert <u>sovereign power</u> over its convenience store properties for the purpose of avoiding real property taxes[.]

(emphasis added).

Consequently, if this Court were writing without the benefit of guidance from the Second Circuit, it might well have been inclined to agree that *Sherrill*'s broad language bars the Cayugas from asserting <u>any</u> sovereign authority involving the recently-purchased parcels, including sovereign immunity from suit. *See, Sherrill*, 125 S.Ct. at 1483 ("[T]he tribe cannot unilaterally revive its ancient sovereignty, in whole or in part, over the parcels at issue."). On this point, the Court finds one of Plaintiff's statements at oral argument to be particularly interesting. Specifically, Plaintiff's counsel indicated that the Tribe does not

claim to have sovereign immunity against tax foreclosure proceedings on all real property that it owns, regardless of location, but instead, only claims such immunity with regard to its property within the geographic boundary of the Cayuga Reservation as established by the Treaty of Canandaigua. In other words, Plaintiff maintains that it has sovereign immunity from suit as to foreclosure actions against properties within the Reservation, which it maintains has never been disestablished, but not as to properties outside the Reservation.[5] This argument seems to admit that the Cayugas' ability to claim sovereign immunity from suit is inherently tied to its ability to exercise at least some amount of sovereign authority over the land. This position, though, does not appear helpful to Plaintiff, since, according to *Sherrill,* the Cayugas cannot assert any sovereign authority over the recently-purchased land, "in whole or in part," due to equitable considerations, even though it may lie within the Reservation.

Accordingly, there is some persuasive force to Defendant's argument that Plaintiff cannot assert sovereign immunity from suit involving the subject properties, based upon the same practical and equitable considerations that drove the *Sherrill* decision. However, for the reasons stated above, the Court will follow the Second Circuit's ruling in *Oneida*, which, although technically without effect after being vacated, clearly rejects Defendant's argument.

---

[5]On this point, Plaintiff curiously seems to claim less sovereign immunity from suit than it could have, pursuant to *Oneida*, since in that case, the Second Circuit indicated that sovereign immunity from suit applied even to foreclosure actions involving property that was never part of an Indian reservation. See, Oneida, 605 F.3d at 163 ("[A]n Indian tribe can purchase land (*including land that was never part of a reservation*); refuse to pay lawfully-owed taxes; and suffer no consequences because the taxing authority cannot sue to collect the taxes owed.") (emphasis added) (Cabranes, J., concurring opinion). Plaintiff 's position also seems inconsistent with the statement in *Oneida* that the doctrines of tribal sovereign authority over tribal land and sovereign immunity from suit are entirely distinct.

Defendant nevertheless argues that the Second Circuit's *Oneida* decision is erroneous because it failed to consider that the subject foreclosure actions are *in rem* proceedings, to which, Defendant argues, tribal sovereign immunity from suit does not apply. However, in the district court decision that was on appeal in *Oneida*, Judge Hurd expressly rejected the same argument by Madison County, that tribal sovereign immunity from suit did not apply to *in rem* foreclosure actions: "The County cannot circumvent Tribal sovereign immunity by characterizing the suit as *in rem*, when it is, in actuality, a suit to take the tribe's property." *Oneida Indian Nation of New York v. Madison County*, 401 F.Supp.2d 219, 229 (N.D.N.Y. 2005). On appeal to the Second Circuit, the county defendants again argued that the Oneidas' tribal immunity from suit did not apply in an *in rem* tax foreclosure proceeding. *See*, Brief and Special Appendix for Defendants-Counterclaimants-Appellants, 2007 WL 6432637 at pp. 58 ("*Yakima* and other cases make it clear that any sovereignty possessed by a tribe *qua* tribe is irrelevant in an *in rem* tax foreclosure proceeding.") & 60 ("It is clear from *Sherrill* and *Yakima* that different standards govern Indian claims of sovereign immunity, depending on whether there is a claim against the tribe itself, or a claim against land owned by the tribe that is not sovereign Indian country. This central distinction is rooted in the limited nature of an *in rem* action, which looks only to the property for relief.") (footnote omitted).

As already discussed, though, the Second Circuit disagreed with the Counties' arguments, and specifically found that the foreclosure actions were barred by the doctrine of tribal sovereign immunity from suit. *See*, *Oneida Indian Nation of New York v. Madison County and Oneida County*, 605 F.3d 149 (2d Cir. 2010). Although the Panel did not

discuss Defendant's argument about *in rem* proceedings in the decision, it obviously considered and rejected it. Accordingly, the Court need not revisit that issue.

To the extent that Defendant's argument on this point relies upon the Supreme Court's decision in *County of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 112 S.Ct 683 (1992), the Court disagrees that the case stands for the proposition that tribal sovereign immunity from suit is inapplicable to *in rem* proceedings. *Yakima* involved the State of Washington's ability to tax certain "fee patent" parcels of land, located within the Yakima Reservation, that had become alienable under the General Allotment Act. *Yakima*'s use of the terms *in rem* and *in personam* pertained to the difference between the *imposition*, not collection, of taxes on a piece of land, as opposed to an individual. The Supreme Court concluded that Yakima County had the power to impose an ad valorem tax on the land, pursuant to an express grant from Congress, but not the ability to impose an excise tax on sellers of the land. Admittedly, the *Yakima* decision did refer in passing to the "power to assess *and collect* a tax on certain real estate." *Id*., 112 S.Ct. at 692 (emphasis added). However, that statement appears to be dicta, since the *Yakima* decision did not involve tribal sovereign immunity from suit.

Defendant next contends that the Cayuga Nation waived any sovereign immunity from suit to which it may be entitled, by paying taxes on some properties. However, a waiver of tribal sovereign immunity must be "clear." *Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509, 111 S.Ct. 905, 909 (1991) ("Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver

by the tribe or congressional abrogation.") (citation omitted).  The Cayugas' payment of taxes on certain parcels of property does not amount to such a waiver.

Finally, Defendant argues that the Cayugas should be estopped from claiming sovereign immunity from suit, since, in a separate action before the New York Court of Appeals, they indicated that they were paying property taxes on their lands. *See, Cayuga Indian Nation of New York v. Gould*, 14 N.Y.3d at 642, n. 11 ("The Cayuga Indian Nation acknowledges its obligation to pay real property taxes and comply with local zoning and land use laws on these parcels and it is undisputed that the Nation has, to date, fulfilled those obligations.").  However, that language from the *Gould* decision referred specifically to the two "convenience store properties," one in Cayuga County and one in Seneca County, that were the subject of that decision, not to all tribe-owned parcels that had been purchased on the open market.  Accordingly, the Cayugas are not estopped from claiming sovereign immunity from suit merely because they acknowledged that they were paying taxes on parcels unrelated to this action.

For the foregoing reasons, the Court finds that Plaintiff has demonstrated that the subject foreclosure actions are barred by the Tribe's sovereign immunity from suit, and that it is therefore entitled to preliminary injunctive relief.

## CONCLUSION

Plaintiff's application for preliminary injunctive relief [#4] is granted.

SO ORDERED.

Dated:   August 20, 2012
         Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge